Green, J.
delivered the opinion of the court.
The defendant was indicted in the Circuit Court of Maury County, under the act of 1831, ch. 102, as a free man of color, emancipated in Kentucky, for removing into this State and residing here, more than twenty days. To this indictment he demurred, which demurrer was sustained by the court, and the Attorney General prosecutes this appeal on behalf of the State.
*339 Several grounds have been taken to sustain the judgment of the circuit court; but that which is chiefly relied on is, — that the act in question is unconstitutional, being repugnant to the provisions of the 2nd Section of the 4th Article of the Constitution of the United States. That section provides, that “The citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States.”
The enquiry then is, whether the defendant, a man of color, emancipated in Kentucky, was a citizen of that State in the sense of the constitution?
Who then is a citizen? Chancellor Kent says, 2 Com. 258, note, that the term is “appropriate to republican freemen;” and certainly among the Romans, where the term had its origin, a citizen was entitled to all privileges, immunities and rights, civil and political. Free negroes have always been a degraded race in the United States, having the right, it is true, of controling their own actions and enjoying the fruit of their own labor, but deprived of almost every other privilege of the free citizen, and constituting an inferior caste in society, — with whom public opinion has never permitted the white population to associate on terms of equality, and in relation to whom, the laws have never allowed the enjoyment of equal rights, or the immunities of the free white citizen.
As this was the description of these people, at the time the Constitution was adopted, can we understand the word “citizen” as used in the section under consideration, as applicable to them?
“The citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States,” says the Constitution. The citizens here spoken of, are those who are entitled to all the privileges and immunities of citizens.” But free negroes, by whatever appellation we call them, were never in any of the States, entitled to all the privileges and immunities of citizens, and consequently were not intended to be included, when this word was used in the Constitution.
In this country, under the free government created by the Constitution, whose language we are expounding, the humblest white citizen is entitled to all the “privileges and immu-' *340 nities” which the most exalted one enjoys. Hence,- in speaking of the rights, which a citizen of one State should enjoy in every other State, as applicable to white men, it is very properly said, that he should be entitled to all the “privileges and immunities” of citizens in such other State. The meaning of the language is, that no privilege enjoyed by, or immunity allowed to, the most favored class of citizens in said State, shall be withheld from a citizen of any other State. How can it be said, that he enjoys all the privileges of citizens, when he is scarcely allowed a single right in common with the mass of the citizens of the State?
It cannot be; — And, therefore, either the free negro is not a citizen in the sense of the Constitution; or, if a citizen, he is entitled to “all the privileges and immunities” of the most favored class of citizens. But this latter consequence, will be contendeded for by no one. It must then follow, that they are not citizens.
But it is contended that they are an inferior order of citizens, subject to many disabilities, and that when they remove into another State, they are entitled to all the “privileges and immunities,” which free negroes in such State enjoy.
In the first place, this argument is already refuted, if we have shown, that a person entitled to all the privileges and immunities of citizens, cannot be restricted in any rights which any class of citizens exercise. But if this construction were allowable, it would not avail the defendant any thing. By the act of 1831, c. 102, s. 2. Slaves, who may be emancipated, are required to leave the State, and the owner desirous of emancipating a slave, must give bond and security in a sum equal to the value of the slave, conditioned that he will forthwith leave the State. The introduction of a resident negro, into the class of the defendant, by emancipation, would entitle him to no “privilege or immunity” in this State, but he must forthwith remove his residence from it. How then, according to the argument, can he be entitled to any privilege or immunity here? Nor would it seem consistent policy, to drive an emancipated slave from us, whose habits and character are known, and permit the introduction from abroad^. *341 ^ítíiout restriction, of others whose characters are unknown, and from whom there may be greater dangers.
Upon the whole, by whatever appellation we may designate free negroes, whether as perpetual inhabitants, or citizens of án inferior grade, we feel satisfied, that they are not citizens in the sense of the Constitution: and, therefore, when coming among us, are not entitled to all the “privileges and immunities” of citizens of this State.
2. It is contended that this act is in derogation of the 8th section of the bill of rights of this State. We think the word “Freeman” as used in the bill of rights, is of equally extensive signification with the word citizen as used in the Constitution of the U. States: and that although the defendant by his emancipation in Kentucky, obtained a qualified freedom, be did not become a “freeman” in the sense of Magna Charta, or of our Constitution.
In these instruments, the' word is used in its largest sense, and means, as does citizen in the Constitution of the United States, one who is entitled to all the privileges and immunities of the most favored class of the community.
An emancipated slave, is called a freeman in common parlance, and in reference to his former state, he is so, having acquired privileges and immunities which he did not enjoy before. But in reference to the condition of the white citizen, his condition is still that of a degraded man, aspiring to no equality of rights with white men, and possessing a very few only, of the privileges pertaining toa “freeman” or “citizen.”
But this provision of our Constitution can only apply to our own citizens, and not to foreigners. If this law applied to Englishmen or Frenchmen it would be constitutional, were it not for treaties and naturalization laws; for surely every free State has a right to prevent foreigners going to it, and to punish those who violate such laws.
The language must therefore be restricted to freemen of this State, for the protection of whom, alone, the provision is made.
Judgment reversed, and cause remanded.